So let's hear the cases on the motions calendar, the two Chevron cases, 19-4091 and 20-464. And we have the appearances of counsel stated for the record. Your honors, good afternoon. This is Andrew Frisch for Mr. Donziger. Good afternoon, your honors. This is Thomas Hungar for Chevron. Fine. Let's hear from Mr. Donziger's counsel, I suppose. He's the petitioner. All right, judge. Thank you. Thank you. Thank you very much. Your honors, there appears to be no precedent, certainly neither Judge Kaplan nor counsel for Chevron have cited any, for either of two things. Either two judges jointly presiding over the same criminal case, or at least two judges having the right to do so as they may choose. One who is the face of the case and the other behind the scenes. Here's the prejudice. A judge wants to keep his own criminal contempt case. He has the right to do that. She has the right to do that. But unlike all of the cases cited by Judge Kaplan in his brief, Judge Kaplan doesn't tell anyone. He arranges for a colleague to be the face of the case. Meanwhile, at the very first opportunity, and this is August 5th, 2019, the day before the first appearance in this case, and this is docket 2285, Mr. Donziger, who by at that time did not have a lawyer, pro se, he asked Judge Preska how she came to be on the case. But she declined to say. And then last week on May 7th, when this issue was also teed up, when she denied various pre-trial motions, she says, quote, there is no rule of law that entitles a defendant to serve discovery demands on the judge. So no one tells the defendant that there are in fact two judges presiding over his case. He has no way of finding out. And in fact, the way we found out is Judge Kaplan's response to this petition for mandamus. Now we know. Here's the prejudice. It speaks to Judge Kaplan's bias. It suggests that Judge Kaplan knew there'd be a powerful argument for his recusal. And so he didn't tell anyone precisely to avoid the motion. It speaks, as I briefed to the court in my motion of yesterday, it speaks to his appointment of Seward. And as we explain in our motion of yesterday, we have strong reason to believe that Judge Chevron is a Seward client, which continues to assert attorney-client privilege. It speaks to Judge Kaplan's apparent failure to correct the record when Seward dissembled about the Seward-Chevron attorney-client relationship, or back in December and early January, when I specifically asked for a judicial inquiry and evidentiary hearing into the relationship. And respectfully, it goes to the charges themselves. Why would a judge find it necessary to keep his role in a case a secret and not be transparent about what his role is and how and why he picked another judge? What changed from August and October of 2019, when the hearing was adjourned on each of those occasions because of the criminal case, until December, when it wasn't and the hearing began? The only thing that changed, most respectfully, was Judge Kaplan's impatience that by December it appeared that Mr. Donziger would fight the charges, that it would not be disposed of, the case would not be disposed of quickly. And it was Magistrate Lehrberger, not me, and not Mr. Donziger, who in August and October 2019 said, there are common questions underlying these two things, the hearing and the criminal case. Mr. Donziger's answers to questions on cross could well be relevant to questions in a criminal contempt hearing addressing his failure to comply, his state of mind, and so forth. It's Magistrate Lehrberger, not me, who said the overlap is not wholly speculative. And yet all of those findings changed in December, and there was no new information other than the continued tendency of the criminal case. Let's talk about the Fifth Amendment and the relevance of the Fifth Amendment to what we're talking about. First, this is about more than the Fifth Amendment. It's about previewing the defense between Rule 16, allowing Gibson Dunn on cross-examination Excuse me. You have one more minute. Thank you, Maria. Allowing Gibson Dunn to be a stalking horse for Seward and Kissel. But regarding the Fifth Amendment, notwithstanding a waiver, the questions go to Mr. Donziger's relationship with the case and his state of mind about the case, whether it was willful. Because by the time of the orders, Mr. Donziger was aware of the issue with regard to what we consider a bait-and-switch, telling Mr. Donziger what he could and could not do, and then faulting him for doing what Judge Kaplan had said he could do. And this isn't normal. It's heads I win, tails you lose. Mr. Donziger explained that he was trying to go to the circuit. Maybe he got some technicality wrong as to how to do it. We'll hash this out at trial. But he didn't think he was doing wrong. All of this is relevant to his state of mind, his relationship to Judge Kaplan in the context of this case. And so even if there are issues about which there's a waiver, we can't rule out the possibility as we sit here, nor should we have to, that a question will be asked to which he can rightfully assert the Fifth Amendment. And if that happens, and if Magistrate Lehrberger or Judge Kaplan overrules the objection, what are we to do? At that point, ask for a break so we can, if we are in the courthouse, take the elevator to the 17th floor and ask for a stay? That's not the way to do it. That's why we have stays precisely here. And even more so, when the case is over and all we're involved in is post-trial litigation about money that Chevron does not need, Mr. Donziger doesn't have, a judge can. Judge Kaplan's right. A judge can keep his criminal contempt case, but he can't keep his keeping it a secret. Okay. Thank you very much. Let me turn to my colleague, Judge Hall, and as I do so, let me state for the record what you perhaps have already inferred or have been informed of. Judge John O. Newman, our colleague, was originally assigned to this panel, and he has recused himself from consideration of this matter. And thus, we are proceeding with the two remaining members of the panel under the Second Circuit internal operating procedures and relevant case law of the circuit. Okay. So, Judge Hall, do you have any questions? Just a few. Thank you, Judge Cabranes. Mr. Frick, would you just review for the panel, please, where these two hearings stand? Has there already been one of these hearings held that you are seeking to have stayed, or am I confusing that with the hearing referenced in your motion? No. So, what happened, Judge Hall, in early December, I believe it's December 12th, when the hearing was scheduled, prior to the hearing, that is, let me back up, Judge Kaplan denied a further adjournment, I believe on December 9th or December 10th, and then on December 12th, that was the date of the hearing. We attempted to get an emergency stay of the hearing before it started that morning, and we put the paperwork in, it's on the docket, but we had some ministerial things to do. Mr. Donjaver and I went to Magistrate Judge Lehrberger's courtroom to let him know that we were trying to do, but we weren't able to leave. He began the hearing. He ruled on the Fifth Amendment motion, that is, Chevron's motion in limine to preclude assertion of the Fifth Amendment, and then he just proceeded with the hearing, principally with Chevron's expert witness, the direct of Chevron's forensic expert witness, but then stopped, and then adjourned it. I mean, nothing has happened with regard to the purge hearing since that date. After the adjournment on December 12th, there was a passage of time until this particular petition was perfected, so to speak, and we began briefing. So, just so I'm clear, what you are now seeking to preclude is the continuation of the hearing so that Mr. Donziger's, as you assert or as he asserts, Fifth Amendment privilege is not at play. Do I understand that correctly? Judge Hall, you do. There's more. It's the Fifth Amendment privilege. It's the other reasons why the court recognizes sometimes the need to stay collateral civil cases, that is, previewing the defense beyond Rule 16, allowing the adversary to be a stalking source for the prosecutor, and in addition, where Magistrate Lehrberger stopped was before we had to stand up and cross-examine Chevron's expert, because in our view, that itself would reveal or serve to reveal matters of the defense, which was another independent reason why we thought and still believe that the purge hearing should be stayed. And is there a schedule, and this will be my last question, Judge Cabranes and Mr. Frick, is there a schedule set for the criminal contempt hearing? Yes, Judge, to the following extent. There is a telephonic pretrial conference scheduled for May 18th, and the trial itself is scheduled for June 15th, 2020. I hasten to add that it is not finally determined whether it's a jury trial or not. Judge Preska's most recent ruling on May 7th was that it would be treated as a misdemeanor until and unless she changed her mind and revisited it, and of course, one of our concerns, apart from not knowing what we're having a month from now to the extent the trial goes forward, obviously there are circumstances that bring us to the phone that might, as opposed to in person, that might change that, but of course, as we've pointed out yesterday and previously, this is a misdemeanor, and Mr. Donziger remains for 10 months on home confinement and electronic monitoring. On that charge? On the criminal contempt charge, correct. Okay, thank you. I have nothing further. Thank you, Judge Cabranes. I have a question or two to follow up on Judge Hall's inquiries. You indicated that the hearing on criminal contempt is now scheduled for May 18th. Is that right? No, the pretrial conference, Judge Cabranes. We're going to have a telephonic conference. I said yes. Just to talk about, as she put in her order, I believe May 8th she issued the order to As we speak, remains on Judge Preska's calendar for June 15th. Okay. Now, is there some other motion or application that you have before us, before the Court of Appeals, apart from the motion, the application from Matt Davis? There are essentially two things that are pending in this case before the Second Circuit. Yesterday, I filed a motion to hold this appeal in abeyance because Judge Preska's ruling on May 7th tees up for the Circuit, we believe, on a petition for mandamus both the disqualification of Seward because of its relationship to Chevron and recusal issues arising from the manner in which Judge Preska and Judge Kaplan dealt with the Seward relationship to Chevron. That is, there is reason to believe that Seward told Judge Kaplan about the attorney-client relationship with Chevron in July before accepting the appointment, but no one told us. Hold on a second. I don't want to go deeply into the merits. I want to just get, in a ministerial or clerical way, I want to know what's pending before us. So you have this motion to hold this very hearing in abeyance, and I take it that would now be moot, is that right? Since we are, in fact, conducting this hearing. Correct. That is, the motion that I made yesterday, the fact that we're arguing today, yes, that motion is mooted by the fact that we're here, yes. Okay, hold it, hold it. What else? What other applications, ministerial or otherwise, are pending? Understood. The pending application is that before the criminal charges were brought, Mr. Donziger had noticed two appeals relevant to findings of civil contempt, one of which, if I remember correctly, he perfected before the criminal charge was filed and one after. So those appeals from Judge Kaplan's findings of civil contempt are pending, and those are relevant to the charges of criminal contempt. And those are not before this motions panel. Those are simply pending in the court of appeals as civil appeals in the normal course. Judge Cabran, if that's correct. And the only other thing... Go ahead. I'm sorry. Go ahead. No, the only other thing I was going to ask, Mr. Branis, is that while that's all that's pending, the fact is we expect to be bringing very shortly another petition based on the subject matter of what we had in our motion of yesterday. Okay, so how many appeals, or do you have the docket numbers by any chance at hand? I don't have them at hand, no. That's all right. But you have two pending appeals. Is that right? Yes, I believe they've been consolidated, but yes. Okay. Well, we'll ask the clerk to confirm that for us later that they've been consolidated. But your assumption is that they are consolidated or should be consolidated. Is that right? Correct. I believe they are, but correct, yes. And this putative third appeal, as you just indicated, having to do with the matter of this proceeding, you're going to formulate that into a civil appeal, a separate civil appeal. Is that right? It'll be in the nature of mandamus, but yes. Yes. And you would wish to have that consolidated with the two pending appeals. Is that right? No, I think we would want to have it consolidated with the matter for which we're together today. Okay. I see. So, all right. So, assuming for the argument only that in 20-464, which is the petition by Donziger for mandamus, were it to be denied, you would pursue that question by filing an appeal seeking the same remedy. I think that's wrong, isn't it? I don't. I think there's more than just that remedy at stake. So, if we expect to file a petition for mandamus based on Judge Preska's order of May 7th, Judge Cabranes, that will encompass two issues. One, recusal of Judges Kaplan and Preska, and two, disqualification of Seward as the privately appointed prosecutor. Right. Okay. I think we have a sense of what's before us. And let's hear from opposing counsel, and I invite them to clarify to the extent they think appropriate the clerical situation. What is it that's pending, and what is it that we're considering today? Thank you, Your Honor. May it please the Court. Thomas Hungar for Chevron. So, with respect to the clerical situation, I think what's pending before this panel, number one, is the mandamus petition in the civil case, 20-464. There's also the appeal that Mr. Donziger filed from the same order denying a stay. That's 19-4091, I believe. And Chevron filed a motion to dismiss that, which the Court has noted on the docket here as a non-argument case. So, there's the combined mandamus and the motion to dismiss the related appeal from the district court order in the civil case denying a stay. And then there's the motion that Your Honor referenced that Mr. Donziger filed yesterday seeking to stay this hearing on the ground that he wants to consolidate it with the impending appeal or mandamus or whatever it's going to be. But I would just note that that's a separate case. The criminal case is a separate case with a separate docket before a separate judge involving separate parties. And so, as we've said in our opposition to that motion, it makes no sense whatsoever to combine that very distinct case with a very distinct set of issues as opposing counsel just articulated with the very straightforward issue that is before the Court in this mandamus proceeding, which has already delayed the civil proceedings for a number of months and we submit should be decided forthwith. And just to back up a bit, notwithstanding many of the issues raised by opposing counsel in his statement, the only relief that was requested by Mr. Donziger in his petition is, quote, issuance of a writ of mandamus ordering Judge Kaplan to stay or otherwise adjourn the civil contempt hearing, close quote. That's the issue before the Court in the mandamus proceeding. And Mr. Donziger can't possibly establish the requisite clear and indisputable entitlement to that relief that he would have to establish in order to obtain mandamus, which is a drastic and extraordinary remedy under any circumstances, but particularly doubly so here because issuance of a stay is itself an extraordinary remedy that is rarely, if ever, required, as this Court said in the Louis Vuitton case. Mandamus is just not an appropriate remedy or mechanism to second-guess a district court's exercise of its broad discretion to weigh the relevant circumstances in deciding whether to grant a stay or not, and that's particularly true when, as here, the petition is part of a larger pattern of overall delay and obfuscation, as the district court has repeatedly found. Mr. Donziger shouldn't be permitted to transform dependency of criminal proceedings into a free pass, allowing him to continue flouting his civil discovery obligations and defying the district court's orders in the civil case. This Court in the Louis Vuitton case made clear that the principal consideration in assessing a stay request like this one is the extent to which continuing the civil proceeding would unduly burden the defendant's exercise of his rights under the Fifth Amendment, but there is no such burden here at all for two reasons. First, Mr. Donziger waived his Fifth Amendment rights to the extent they might have been implicated by the civil purge hearing by voluntarily submitting declarations under oath testifying to the very question at issue in the civil case, whether or not he has come into compliance with paragraph 4 of the forensic inspection protocol. So he's waived whatever Fifth Amendment rights he might have had, if any, on that question, and in any event, there are no Fifth Amendment rights at stake for the separate reason that there's no meaningful overlap between the question pending in the civil case and the issues in the criminal case. Excuse me. You have one more minute. Thank you. With respect to the belatedly raised recusal arguments, the petition seems to assume that it was somehow improper for Judge Kaplan to refer the criminal case to Judge Preska. That's contrary to law. This Court has twice rejected Mr. Donziger's attempts to disqualify Judge Kaplan, and both Rule 42 and binding precedent confirm that charging a party with civil contempt for violating court orders is not a basis for recusal, and the district court's rules expressly permitted the transfer of the criminal proceeding to Judge Preska, and contrary to counsel's argument this morning, the Supreme Court endorsed precisely that approach in the Nova case, which is cited I believe in Judge Kaplan's brief. So ultimately, this petition is part and parcel of Mr. Donziger's strategy of endless delay, and there is no reason to consolidate it with any further proceedings or not to proceed immediately to deny it, which we ask the Court to do. Thank you. Judge Hall? I don't think I have any questions. Thank you. Neither do I. Counsel for Donziger may wish to take advantage of a one-minute reply. Hello? I forgot to unmute. I'm here now. I've been on mute. I apologize. Can you hear me now? Yes, yes, fine. One minute. All right. Thank you so much, Judge. Both matters, that is, the matter that's on the calendar today, the hearing and the prospective petition that we'll be filing very shortly, both go to Judge Kaplan's right to make rulings now, whether he does it under the guise of the civil case or he does it under the guise of the criminal case, to make rulings that affect the criminal case. What's different here from any other case that we can find is that Judge Kaplan had the right to keep the civil case, but he didn't keep it. He gave it to Judge Preska and then didn't tell us that his position was that he wasn't recused, that he had the right to make rulings either in the civil case or the criminal case that relate to the criminal case. It is for that reason that after he filed the response to the petition, we teed up a motion to recuse Judge Kaplan on these grounds before Judge Preska. She denied that on May 7th, and that's one of the grounds we'll be raising in addition to the Seward and Kissel issue in the petition that we intend to file shortly. Thanks very much. We'll reserve the decision on the pending, on the two pending motions.